UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
POWER UP LENDING GROUP, LTD.,

<table>
<tr><td></td><td>Plaintiff,</td><td></td><td>**REPORT AND**<br>**RECOMMENDATION**</td></tr>
<tr><td></td><td></td><td></td><td>CV 18-2568 (JS) (AKT)</td></tr>
<tr><td>- against -</td><td></td><td></td><td></td></tr>
</table>

CORIX BIOSCIENCE, INC. and
MICHAEL OGBURN,

                                        Defendants.
----------------------------------------------------------X

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

I.     PRELIMINARY STATEMENT

Power Up Lending Group, Ltd. ("Power Up" or "Plaintiff"), an investor in small

capitalization companies — also known as penny stock companies — commenced this civil

action on May 5, 2018 against, Corix Bioscience, Inc. ("Corix"), one such penny stock company,

and its chief executive officer, Michael Ogburn ("Ogburn") (collectively, the "Defendants") to

collect on two convertible promissory notes. *See generally* Compl. [DE 1]. Presently before this

Court on referral from Judge Seybert is Plaintiff's Motion for Default Judgment. *See* Plaintiff's

Motion for Default Judgment ("Pl.'s Mot.") [DE 10]. For the reasons set forth below, the Court

respectfully recommends to Judge Seybert that Plaintiff's motion be GRANTED.

II.    BACKGROUND

The facts set forth here, which are assumed to be true for purposes of this motion, are

taken from the Complaint and accompanying exhibits as well as the exhibits annexed to the

August 20, 2018 Affidavit of Curt Kramer, Esq. in Support of the Motion for Default Judgment ("Kramer Aff.") [DE 10-1].

Plaintiff Power Up is a corporation organized under the laws of Virginia with an office in Nassau County. *See* Compl. ¶¶ 2, 8. Defendant Corix is a Wyoming corporation with offices in Arizona and is a citizen of Arizona. *Id*. ¶¶ 2, 9. Defendant Ogburn is a citizen of Arizona. *Id.* ¶¶ 1, 10. Power Up was in the business of investing in publicly traded nano-cap companies, otherwise known as "penny stock companies," which are often capital-constrained which hinders their access to banks or investment firms. *See id*. ¶ 2; Kramer Aff. ¶ 3. In particular, it was Power Up's practice to make commercial loans to such companies in return for shares purchased at a discount to market price. *See* Compl. ¶ 2. Corix is one such penny stock company in which Plaintiff invested. *See id.*

On November 6, 2017, Corix as the borrower made and delivered to Power Up a convertible promissory note in the amount of $128,000 ("the November Note"). *Id*. ¶ 14. That Note was issued pursuant to a Securities Purchase Agreement ("the November Agreement") which provided for "certain issuance of, and conversion rights in and to the common stock" of Corix. *Id.* The November Note provided that "in the event that the Defendant shall fail to maintain the listing of its Common Stock on at least one of the over counter markets, or an equivalent replacement exchange, the Defendant shall be in material default of the Note and Agreement." *Id*. ¶ 16; *see* Kramer Aff., Exs. A, B.

On February 6, 2018, Corix as the borrower executed a second convertible promissory note ("the February Note") (together with the November Note, "the Notes") to Power Up in the amount of $63,000. Compl. ¶ 17. The February Note was also issued pursuant to a Securities Purchase Agreement ("the February Agreement") (together with the November Agreement, "the

Agreements") which provided for "certain issuance of, and conversion rights in and to the common stock" of Corix. *Id.* The February Note and Agreement contained provisions identical to those in the November Note and Agreement in that any failure by Corix to maintain its stock listing with over-the-counter ("OTC") markets would constitute a material default under the February Note and Agreement. *Id.* ¶ 18; *see* Kramer Aff., Exs. C, D.

The Notes further provide that Corix's failure to maintain its common stock listing entitles Power Up to recover 150% of the outstanding principal amounts of each of the Notes together with accrued and unpaid interest and default interest. Compl. ¶ 23; Kramer Aff., Exs. A and C at 10. On April 12, 2018, the Securities and Exchange Commission ("SEC") de-listed the Common Stock of Corix and suspended the trading of Corix stock. Compl. ¶ 23. As a result, Corix fell into material default of its obligations under both Notes and Agreements. *Id.* ¶ 21. On April 17, 2018, Power Up sent Corix a notice of default, detailing that Corix had failed to maintain its Common Stock listing and demanding 150% of the outstanding principal. *See* Compl. ¶ 22 and Notice of Default Letter, attached to Complaint at p. 15; *see also* Kramer Aff. ¶ 22. The November Note reached maturity on August 7, 2018, but Corix did not pay the amounts due to Plaintiff. *See* Kramer Aff. ¶¶ 8-9. Thus, Corix defaulted again on the November Note as well as the February Note due to the cross-default provision. *See id.* ¶ 8. To date, Corix has not cured any of its defaults or made any payments under the Notes. *Id.* ¶ 8; Compl. ¶ 24. Consequently, Plaintiff brought the instant action.

### III.   PROCEDURAL BACKGROUND

Plaintiff filed the Complaint on May 1, 2018, based on diversity jurisdiction, to collect on the Notes. The Complaint asserts causes of action for breach of promissory note, breach of contract, fraud, and breach of fiduciary duty. *See generally* Compl. Plaintiff effected service

upon Defendants on May 2, 2018.  *See* Returns of Summons [DE 4-5].  Defendants' answers

were due on or before May 23, 2018.  *Id*.  Defendants never answered or otherwise responded to

the Complaint and Plaintiff obtained a certificate of default from the Clerk of the Court on

July 24, 2018.  *See* Clerk's Entry of Default [DE 8].   On August 20, 2018, Plaintiff moved for

entry of default judgment pursuant to Fed. R. Civ. P. 55.  *See generally* Pl.'s Mot.  Judge Seybert

then referred the motion to this Court for a report and recommendation as to whether the motion

should be granted.

      While Plaintiff's motion was under consideration, this Court scheduled a telephone

conference during which Plaintiff's counsel clarified that Power Up was only seeking judgment

on the first cause of action asserted in the Complaint, namely, breach of the Notes.  On

February 15, 2019, Plaintiff's counsel filed a letter on ECF confirming that Plaintiff is seeking

judgment only on the first cause of action and is withdrawing all other causes of action.  *See*

DE 13.

## IV.   DISCUSSION

      The Federal Rules prescribe a two-step process for a plaintiff to obtain a default

judgment.  First, when "a party against whom a judgment for affirmative relief is sought has

failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk

must enter the party's default."  Fed. R. Civ. P. 55(a).  Second, after a default has been entered,

and the defendant fails to appear or move to set aside the default, a court may, on motion by

plaintiff, enter a default judgment.  Fed. R. Civ. P. 55(b)(2).

      Once a defendant is found to be in default, the defendant is deemed to have admitted all

of the well-pleaded allegations in the complaint pertaining to liability.  *Greyhound Exhibitgroup,*

*Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992).  However, a court retains

discretion to determine whether a final default judgment is appropriate in the circumstances. *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993); *see also Taylor v. 312 Grand St. LLC*, 15 Civ. 5410, 2016 WL 1122027, at *3 (E.D.N.Y. Mar. 22, 2016) ("[J]ust because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right.") (internal quotation marks and citations omitted).  In view of the Second Circuit's "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored." *Enron Oil Corp.*, 10 F.3d at 96; *U.S. Commodity Futures Trading Comm. v. McCrudden*, No. CV 10-5567, 2015 WL 5944229, at *30 (E.D.N.Y. Oct. 13, 2015).

As such, despite a defendant's default, the plaintiff bears the burden of demonstrating that the unchallenged allegations and all reasonable inferences drawn from the evidence provided establish the defendant's liability on each asserted cause of action.  *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011); *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981).  Thus, "after default . . . it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law."  *Rolls-Royce PLC v. Rolls-Royce USA, Inc.*, 688 F.Supp.2d 150, 153 (E.D.N.Y. 2010) (internal quotation marks and citations omitted), *report and recommendation adopted by* 688 F.Supp.2d 150, 151 (E.D.N.Y. 2010).

Upon finding a defaulting defendant liable, a court must then conduct an analysis to establish damages to a "reasonable certainty."  *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999).

## A.      Jurisdiction

The Court has subject matter jurisdiction in this case, pursuant to 28 U.S.C. § 1332(a). The parties are diverse (*see* Compl. ¶¶ 8-10; *id.* at 13) and the amount in controversy exceeds

$75,000 (*see* Kramer Aff. ¶ 6).  The Court has personal jurisdiction over Defendants pursuant to the parties' valid forum selection clause contained in § 4.7 of the Notes.  *See* Kramer Aff., Exs. A, C.  Pursuant to § 4.7,

> [a]ny action brought by either party against the other concerning the transactions contemplated by this Note shall be brought only in the state courts of New York or in the federal courts located in the Eastern District of New York.  The parties . . . hereby irrevocably waive any objection to jurisdiction and venue of any action instituted hereunder and shall not assert any defense based on lack of jurisdiction or venue or based on *forum non conveniens*.

*See id*., Ex. A, § 4.7; *id.,* Ex. C, § 4.7; *Export-Import Bank of the United States v. Hi-Films S.A. de C.V.*, No. 09 Civ. 3573, 2010 WL 3743826, at *4 (S.D.N.Y. Sep. 24, 2010) ("Here, Luna consented to jurisdiction in the Southern District of New York when he executed each of the promissory notes."); *see also D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 103 (2d Cir. 2006) (citing *Nat'l Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311, 315-316 (1964)) ("Parties can consent to personal jurisdiction through forum-selection clauses in contractual agreements.").

   **B.      Whether the Defendant has Defaulted**

It is undisputed from the record that Defendants have in fact defaulted.  Plaintiff effectively served Defendants on May 2, 2018, personally serving Ogburn in his individual capacity and as agent for service of process of Corix.  *See* Returns of Summons [DE 4-5]. Though Defendants' answers were due on or before May 23, 2018, Defendants never answered the Complaint nor otherwise defended this action, and Plaintiff obtained a certificate of default on July 24, 2018. *See* DE 8.  To date, Defendants still have not entered an appearance or otherwise responded to this action.  Therefore, the Court finds that Defendants have in fact defaulted and the Court will proceed to the issues of liability and damages.

## C.      Liability

As a preliminary matter, the Court points out that Plaintiff has failed to brief the Court on the law governing liability and damages.  Plaintiff's Memorandum of Law, barely two pages in length, is decidedly insufficient and addresses only Defendants' failure to answer or otherwise respond to the Complaint.  According to the Local Rules of the Eastern District of New York, except for letter-motions, all motion papers shall include a "memorandum of law, setting forth the cases and other authorities relied upon in support of the motion, and divided, under appropriate headings, into as many subparts as there are issues to be determined."  Local Civ. R. 7.1.  Significantly, Plaintiff's Memorandum of Law does not contain any section or authority related to the issues of liability for breach of the Notes or damages.  If this Court were to strictly apply Judge Seybert's Individual Rules, Plaintiff's motion should be rejected.   However, the Court is also cognizant of the time that this motion has been pending, and, consequently, will proceed to address the substance of the motion.

### 1.      *Breach of the Notes*

The Notes expressly provide that they are to be "governed by and construed in accordance with the laws of the State of Virginia without regard to principles of conflicts of laws."  *See* Kramer Aff., Exs. A and C at § 4.7.  "Courts sitting in diversity jurisdiction apply the choice of law rules of the forum state, which in New York permits parties to contract for the applicable state law so long as the chosen state bears a 'reasonable relation' to the transaction." *LG Capital Funding, LLC v. Coroware, Inc.* No. 16-CV-2266, 2017 WL 9250379 at *3 (E.D.N.Y. July 12, 2017) (citing *Bank of N.Y. v. Amoco Oil Co.*, 35 F.3d 643, 650 (2d Cir. 1994), *report and recommendation adopted by* No. 16-CV-2266, 2017WL 3973921 (E.D.N.Y. Sept. 8, 2017); N.Y. U.C.C. Law § 1-301.  Here, since Plaintiff is a Virginia corporation, the Court finds

7

that Virginia law is reasonably related to the transaction. *See Peri Formwork Sys., Inc. v. Vesta 50, LLC*, No. 10-CV-4773, 2013 WL 1334475, at *2 (E.D.N.Y. Mar. 11, 2013) (applying Maryland contract law in diversity suit where contract selected Maryland law and Plaintiff corporation was a citizen of Maryland), *report and recommendation adopted by* No. 10-CV-4773, 2013 WL 1334448 (E.D.N.Y. Mar. 29, 2013).

"Under Virginia common law, breach of a promissory note is encompassed under a breach of contract claim." *Premier Bank, Inc. v. Tech. Res., Inc.,* No. l:13–CV–340, 2013 WL 6834380, at *5 (E.D.Va. Dec. 23, 2013) (citing *CIT Small Bus. Lending Corp. v. Core Holdings, LLC,* Civil No. 2:12cv505, 2013 WL 711395, at *1 (E.D.Va. Feb.7, 2013)).  Virginia law provides, "[t]he elements of a breach of contract action are: (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *S. Bank & Tr. Co. v. Pride Grp., LLC*, No. 2:14CV255, 2015 WL 410726, at *5 (E.D.Va. Jan. 28, 2015) (citation omitted).  In addition, to bring an action to enforce a note, such note must "be signed by the party who is to be charged thereby, or his agent." Va.Code Ann. § 8.01–27.

As to the first element, the factual allegations state that Plaintiff and Corix entered into the November Note and its accompanying securities purchase agreement on November 6, 2017 in which Plaintiff loaned Defendant $128,000.  Compl. ¶ 14.  In exchange for Plaintiff's commercial loan, Corix granted Plaintiff certain issuance of, and conversion rights in and to, the common stock of Corix.  Further, it was agreed that an event of default shall occur upon the common stock of Corix being de-listed from the over-the-counter markets. *Id.* ¶¶ 14, 16.  The Complaint further states that Plaintiff and Corix entered into the February Note and its accompanying securities purchase agreement on February 6, 2019 at which time Plaintiff loaned

Defendant $63,000. *Id*. ¶ 17.  Like the November Note, under the terms of the February Note, in exchange for Plaintiff's commercial loan, Corix granted Plaintiff certain issuance of, and conversion rights in and to the common stock of Corix and further agreed that an event of default shall occur upon the common stock of Corix being de-listed from the over-the-counter markets. *Id*. ¶¶ 17-18.  The factual allegations further assert that Corix's failure to maintain its common stock listing entitles Plaintiff to recover 150% of the outstanding principal, together with accrued and unpaid interest and default interest. *Id*. ¶¶ 8-9.  This information sufficiently states the first element of the claim as to Corix, namely, formation of the contracts (Notes) and enforceable obligations of Corix to Plaintiff.

With respect to the second element — a breach by Corix — the Complaint states that on April 12, 2018, the SEC de-listed the common stock of Corix, which constitutes an event of default under the Notes.  That action entitled Plaintiff to recover 150% of the outstanding principal amount owed under the Notes, together with accrued and unpaid interest and default interest. *Id*. ¶ 23.  In light of these specific allegations, Plaintiff has sufficiently asserted Corix's breach of its obligations under the Notes.  Further, Plaintiff avers that Corix caused damage to Plaintiff in an amount equal to 150% of the principal balance of $128,000 on the November Note, and 150% of the principal balance of $63,000 on the February Note. *Id*. ¶ 24.  As a result, Plaintiff maintains it is entitled to judgment for not less than $286,500, together with interest and default interest. *Id*.  According to the Complaint, Ogburn was the signatory for the transactions at issue, and the Court observes that the Notes were signed by Ogburn as the Chief Executive Officer and President of Corix. *Id*. ¶ 6; *see* Kramer Aff., Exs. A and C, "IN WITNESS WHEREOF" clause.  Overall, the Court finds that Plaintiff has made the necessary factual averments to state the elements of a breach of contract claim as against Corix.

In contrast, the Court finds that Plaintiff has failed to allege facts sufficient to state a cause of action against Ogburn for breach of contract.  The Notes are contracts between Power Up and Corix (*see generally* Kramer Aff., Exs. A, C), executed by Ogburn in his capacity as a "duly authorized officer" of Corix (*see* Kramer Aff., Exs. A and C, "IN WITNESS WHEREOF" clause.  Significantly, Plaintiff fails to state any facts alleging that Ogburn was a party to the Notes or was otherwise individually responsible for Corix's contractual obligations under their terms.

In Virginia, "independent legal existence of the corporation is a basic component of corporate law." *O'Hazza v. Executive Credit Corp.,* 246 Va. 111, 114, 431 S.E.2d 318, 320–21 (1993).  "While Virginia law permits actions to disregard this separate legal existence, settled precedent cautions courts that piercing of the corporate veil should be permitted only when necessary to promote justice and only under exceptional circumstances." *C.F. Tr., Inc. v. First Flight Ltd. P'ship*, 111 F. Supp. 2d 734, 740 (E.D. Va. 2000) (quoting *Cheatle v. Rudd's Swimming Pool Supply Co., Inc.,* 234 Va. 207, 212, 360 S.E.2d 828, 831 (1987)) (internal quotation marks omitted).  Generally, these circumstances exist only where the corporate insider has so abused or disregarded the corporate form that the corporation becomes the alter ego of the insider.  *C.F. Tr., Inc*., 111 F. Supp. 2d at 740.  Specifically, the law provides that a court can pierce the corporate veil only upon a showing that "(1) the corporation was the *alter ego,* alias, stooge, or dummy of the other entity; and (2) the corporation was a device or sham used to disguise wrongs, obscure fraud or conceal crime." *Informatics Applications Grp. Inc. v. Shkolnikov,* 836 F.Supp.2d 400, 427 (E.D. Va.2011).  The party seeking to pierce the corporate veil bears the burden of proof with respect to these elements.  *William v. AES Corp.*, 28 F. Supp. 3d 553, 562 (E.D. Va. 2014)

Alter ego liability may be imposed "where there is such unity between a corporation and an individual that the separateness of the corporation has ceased." 1 William Meade Fletcher, *Fletcher Cyclopedia of the Law of Corporations* § 41.10. The Fourth Circuit has set forth several factors which "guide the determination of whether one entity constitutes the alter ego of another," including "gross undercapitalization, insolvency, siphoning of funds, failure to observe corporate formalities or maintain proper corporate records, non-functioning of officers, control by a dominant stockholder and injustice or fundamental unfairness." *Vitol,* 708 F.3d at 544.

Here, the Complaint asserts that Ogburn was at all relevant times the President and Chief Executive Officer of Corix and was directly engaged in the wrongdoing underlying the litigation. *See* Compl. ¶ 1. In connection with its averments relating to venue, Plaintiff further alleges that Ogburn is "sufficiently connected with [Corix] and the transactions at issue." *Id.* ¶ 6. However, there are no allegations in the Complaint about Ogburn in connection with the formation or breach of the Notes or the damages sustained as a result of Corix's breach. Further, the Complaint does not contain any allegations that Ogburn was the alter-ego of Corix or that Corix was a sham corporation. Neither does the pleading question the propriety of Corix's independent corporate form. Therefore, Plaintiff has not set forth any facts sufficient to state a claim against Ogburn for breach of contract.

### D.    Damages

Having determined that the Complaint establishes liability against Corix for breach of contract, the Court must next assess the damages to which Plaintiff is entitled based on the breach of contract claim. Although Rule 55 presumes all factual allegations as admitted for purposes of determining liability, no such deference is given when calculating damages. *Greyhound Exhibitgroup v. E.L.U.L. Realty Corp*, 973 F.2d 155, 158 (2d Cir. 1992). "Instead,

damages must have an evidentiary basis such that they can be "ascertained with reasonable certainty." *LG Capital Funding, LLC v. Worthington Energy,* No. 16-CV-6288, 2018 WL 1370266 at \*4 (E.D.N.Y. Feb. 20, 2018) (citing *Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Constrs. Inc.*, 699 F.3d 230, 234 (2d Cir. 2012). In support of its motion, Plaintiff has submitted the Kramer Affidavit as well as copies of the Notes and their underlying securities purchase agreements. *See generally* Kramer Aff., Exs. A-D. These submissions are sufficient to satisfy Plaintiff's evidentiary burden. *See LG Capital Funding LLC,* 2018 WL 1372066 at \*4 (granting damages based on plaintiff's submission of a declaration and the underlying notes); *accord, Castcapa Constr., Ltd. Liab. Co. v. TMB Servs. Ltd. Liab. Co.*, No. 17-cv-1023 2017, 2017 WL 9511080, at \*2 (E.D.N.Y. July 24, 2017) (same), *report and recommendation adopted as modified by* 2018 WL 623546 (E.D.N.Y., Jan. 30, 2018).

According to Plaintiff, as a result of Defendants' defaults under the Notes, Power Up is entitled to $286,500, which represents 150% of $191,000 — the outstanding principal under the Notes. *See* Kramer Aff. ¶¶ 8-9. On top of the outstanding principal, Plaintiff maintains that the additional damages are due as "liquidated damages and not as a penalty." *Id*. ¶ 9.

Having reviewed Plaintiff's submissions, the plain terms of the Notes provide a basis for awarding Plaintiff the outstanding principal, regular interest, and default interest. *See* Kramer Aff., Exs. A, C. Under the Notes, Corix agreed to pay the sum of the principal together with 12% interest per annum until the principal becomes due, and default interest at a rate of 22% per annum upon an event of default. *Id*.

### 1.   *Principal and Interest*

The original face value of the November Note was $128,000. Corix made no payments under the November Note after it was issued. Kramer Aff. ¶ 8. Therefore, on the default date,

the full amount of the principal remained outstanding.  Between November 6, 2017, the date the

November note was issued, and August 15, 2018, the maturity date, the November Note accrued

regular interest on the unpaid principal balance at a rate of 12% per annum.  In order to calculate

the regular interest accrued, the Court has first determined that 283 days elapsed between

November 6, 2017 and August 15, 2018, including the end date.  The following calculation is

then performed to determine *regular* interest owed: $128,000 [principal] x .12 [regular interest

rate] = $15,360 x 283/365 [number of days interest is due] = **$11,909.26**.

  With respect to *default* interest, between August 15, 2018 and the date of this Report and

Recommendation (*i.e.*, March 14, 2019), default interest accrued on the balance of the November

Note ($11,909.26 + $128,000 = $139,909.26), at a rate of 22% per annum.  In order to calculate

the default interest accrued, the Court first determined that 210 days have elapsed from the

maturity date to the March 14, 2019 date of this Report and Recommendation.  The following

calculations are then performed to determine the default interest owed: $139,909.26 [principal

balance] x .22 [default interest rate] = $30,780.04 x 210/365 [number of days interest is due] =

**$17,709.06**.  Therefore, the present amount owed on the November Note is **$157,618.32**

($139,909.26 + $17,709.06).

  The original face value of the February Note was $63,000.  Corix made no payments

under the February Note after it was issued.  Therefore, on the default date, the full amount of

the principal remained outstanding.  Between February 6, 2018, the date the February note was

issued, and August 15, 2018, the maturity date, the February Note accrued interest on the unpaid

principal balance at the regular rate of 12% per annum.  To calculate the *regular* interest accrued,

the Court first determined that 191 days elapsed from February 6, 2018 to August 15, 2018,

including the end date.  The Court then performed the following calculation using the same

method to determine regular interest owed:  $63,000 x .12 = $7,560 x (191/365) = $3,956.05.

Between August 15, 2018 and the date of this Report and Recommendation, *default* interest

accrued on the balance of the February Note, $66.956.05 ($3,956.05 + $63,000), at a rate of 22%

per annum.  To calculate the default interest accrued, the Court first determined that 210 days

have elapsed from the maturity date to the date of this Report and Recommendation.  The

following calculation was then performed to determine the default interest owed:  $66,956.05 x

.22 = $14,730.33 x (210/365) = $8,474.79.  Therefore, the present amount owed on the February

Note is **$75,430.84** ($66,956.05 + $8,474.79).

Based on these calculations, the total amount owed under the Notes as of the date of this

Report and Recommendation is **$233,049.16** ($157,618.32+$75,430.84).  Default interest of 22%

per annum continues to accrue on the total balance of the Notes.

### 2.   *Liquidated Damages*

According to Plaintiff, 150% of the outstanding principal represents "liquidated damages

and not . . . a penalty."  Kramer Aff. ¶ 9.  Significantly, Plaintiff has provided the Court with no

authority in support of that contention.  The Supreme Court of Virginia has held that "[u]nder the

common law, contracting parties may agree in advance that, in the event the contract is breached,

the breaching party shall pay liquidated damages."  *Perez v. Capital One Bank*, 258 Va. 612,

615, 522 S.E.2d 874, 875 (1999).  However, a liquidated damages clause will be construed as an

unenforceable penalty "when the damage resulting from a breach of contract is susceptible of

definite measurement, or where the stipulated amount would be grossly in excess of actual

damages." *Brooks v. Bankson,* 248 Va. 197, 208, 445 S.E.2d 473, 479 (1994) (citing *Taylor,* 233

Va. at 75, 353 S.E.2d at 747); *accord 301 Dahlgren,* 240 Va. at 203, 396 S.E.2d at 653.

"[W]here the damage resulting from a breach of contract is susceptible of definite measurement

14

(as when the breach consists of failure to pay a sum of money) or where the stipulated amount would be grossly in excess of actual damages, courts of law usually construe such a stipulation as an unenforceable penalty." *Taylor v. Sanders*, 233 Va. 73, 75, 353 S.E.2d 745, 747 (1987). Here, Defendants' breaches consisted of failures to pay certain sums of money -- the amounts owed on the Notes plus applicable interest. Therefore, the liquidated damages clause is an unenforceable penalty. Consequently, this Court respectfully recommends to Judge Seybert that liquidated damages not be awarded.

## V.    CONCLUSION

For the foregoing reasons, the Court respectfully recommends to Judge Seybert that Plaintiff's motion for entry of default judgment be GRANTED and that damages be awarded in the amount of $**$233,049.16**, comprised of unpaid principal, unpaid regular interest which was due upon default, and default interest, which continues to accrue at a default interest rate of 22% annually, as consistent with the calculations set forth in this Report and Recommendation.

## VI.    OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. *See also* Fed. R. Civ. P. 6(a) and (e). Such objections shall be filed with the Clerk of the Court via ECF. A courtesy copy of any objections filed is to be sent to the Chambers of the Hon. Joanna Seybert and to the Chambers of the undersigned. Any requests for an extension of time for filing objections must be directed to Judge Seybert prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140, 155

(1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir. 1997), *cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).


**Plaintiff's counsel is directed to serve a copy of this Report and Recommendation upon the Defendants forthwith by overnight mail and first-class mail and to file proof of such service on ECF by March 18, 2019.**


<b>SO ORDERED.</b>

Dated: Central Islip, New York
      March 14, 2019

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge
